Exhibit A

FL-103-ARB 10/31/2010

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| Sunny Florida Cars<br>2000 9th St W<br>Bradenton, FL 34205 | Devontay A Williams<br>15404 Ibis Fall Pl<br>Suncity Center, FL 33573 | No.<br>Date | App# 86487180 - V# 2<br>10/28/2023 |

Buyers' Month of Birth  April

☐ Business, commercial or agricultural purpose Contract.

Documentary Stamp Tax. Florida documentary stamp tax required by law in the amount of $ _____ 75.95 has been paid or will be paid directly to the Florida Department of Revenue. Certificate of Registration No. _____

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of<br>$ 8000.00 |
|---|---|---|---|---|
| 24.52 % | $ 12883.51 | $ 21698.09 | $ 34581.60 | $ 42581.60 |

Payment Schedule. Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| | $ _____ | |
| 48 | $ 720.45 | Monthly, Beginning 12/11/23 |
| | $ _____ | |

Security. You are giving us a security interest in the Property purchased.

Late Charge. If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.

Prepayment. If you pay off this Contract early, you may have to pay a penalty.

Contract Provisions. You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2019 | Dodge | Charger | Sedan | 2C3CDXGJ5KH507746 | 108902 |

☐ New
☒ Used        Other:
☐ Demo

## Description of Trade-In

N/A

## Conditional Delivery

☐ Conditional Delivery. If checked, you agree that the following agreement regarding securing financing ("Agreement") applies:

_____. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

Payment. You promise to pay us the principal amount of

$ 21698.09 _____ plus finance charges accruing on the unpaid balance at the rate of 24.52 % per year from the date of this Contract until paid in full. Finance charges accrue on a 365 day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the Truth-In-Lending Disclosure. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

Down Payment. You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the Itemization of Amount Financed.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

Retail Installment Contract-FL. Not for use in transactions secured by a dwelling.<br>Bankers Systems™<br>Wolters Kluwer Financial Services © 1995, 2010

RSSIMVLFAZEL 10/31/2010

Page 1 of 6

☐ **Loan Processing Fee.** You agree to pay a loan processing fee of

$ _N/A_____ that will be ☐ paid in cash. ☐ financed over the term of the Contract.

☒ **Pre-delivery Service Fee.** You agree to pay a pre-delivery service fee of

$ _399.00_____ that will be ☐ paid in cash. ☒ financed over the term of the Contract. This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of

$ _N/A_____ if you pay this Contract in full before we have earned that much in finance charges.

### Itemization of Amount Financed

| | | |
|---|---|---|
| a. Price of Vehicle, etc. (incl. sales tax of $ _1768.14_____ ) | $ | 27763.14 |
| b. Pre-delivery service fee | $ | 399.00 |
| c. **Cash Price** (a+b) | $ | 28162.14 |
| d. Trade-in allowance | $ | N/A |
| e. Less: Amount owing, paid to (includes m): _____ | $ | N/A |
| f. Net trade-in (d-e; if negative, enter $0 here and enter the amount on line m) | $ | N/A |
| g. Cash payment | $ | 8000.00 |
| h. Manufacturer's rebate | $ | N/A |
| i. Deferred down payment | $ | N/A |
| j. Other down payment (describe) _____ | $ | N/A |
| k. **Down Payment** (f+g+h+i+j) | $ | 8000.00 |
| l. **Unpaid balance of Cash Price** (c-k) | $ | 20162.14 |
| m. Financed trade-in balance (see line f) | $ | |
| n. Paid to public officials, including filing fees | $ | N/A |
| o. Insurance premiums paid to insurance company(ies) (See *Insurance Disclosures* section for coverage and benefits types.) | $ | N/A |
| p. Service Contract, paid to: _____ | $ | 1460.00 |
| q. _Documentary Stamp Tax_____ | $ | 75.95 |
| r. _____ | $ | N/A |
| s. _____ | $ | N/A |
| t. _____ | $ | N/A |
| u. _____ | $ | N/A |
| v. _____ | $ | N/A |
| w. _____ | $ | |
| x. **Total Other Charges/Amts Paid** (m thru w) | $ | 1535.95 |
| y. **Prepaid Finance Charge** | $ | N/A |
| z. **Amount Financed** (l+x-y) | $ | 21698.09 |

We may retain or receive a portion of any amounts paid to others.

### Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**
☐ Single ☐ Joint ☐ None
Premium $ _N/A_____ Term _N/A_____
Insured _____

**Credit Disability**
☐ Single ☐ Joint ☐ None
Premium $ _N/A_____ Term _N/A_____
Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: _____ DOB _____

By: _____ DOB _____

By: _____ DOB _____

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ _N/A_____. If you get insurance from or through us you will pay $ _N/A_____ for _0 months_____ of coverage.

This premium is calculated as follows:

☐ $ _N/A_____ Deductible, Collision Cov. $ _N/A_____
☐ $ _N/A_____ Deductible, Comprehensive $ _N/A_____
☐ Fire-Theft and Combined Additional Cov. $ _N/A_____
☐ _____ $ _N/A_____

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS CHECKED AND INDICATED.

*[This area intentionally left blank.]*

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. We may impose an acquisition charge of $75.00 for services performed in processing this Contract if it is paid in full within 6 months after the Contract's effective date. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of 5% of the face amount of the instrument, or the fee specified in Fla. Stat. § 832.08 (5), whichever is greater. The fees provided for in Fla. Stat. § 832.08 (5) are: $25.00, if the face value of the check does not exceed $50.00; $30.00 if the face value exceeds $50.00 but does not exceed $300.00; $40.00 if the face value exceeds $300.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Florida and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** From time to time you agree we may monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

- You fail to perform any obligation that you have undertaken in this Contract.
- We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance from any insurance provider that is reasonably acceptable to us. Your choice of an insurance provider will not affect the credit decision. We may impose reasonable requirements concerning the extent of coverage and the financial soundness of the insurance provider. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay

will be due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductible. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Arbitration Provision

**Arbitration Provision. PLEASE READ CAREFULLY! By agreeing to this arbitration provision you are giving up your right to go to court for claims and disputes arising from this Contract:**

- **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.**
- **YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION AGAINST US IF A DISPUTE IS ARBITRATED.**
- **IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL ARE GENERALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.**

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. *"Claim"* means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to:

1. the credit application;
2. the purchase of the Property;
3. the condition of the Property;
4. this Contract;
5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or
6. any related transaction, occurrence or relationship.

This includes any Claim based on common or constitutional law, contract, tort, statute, regulation, or other ground. To the extent allowed by law, the validity, scope, and interpretation of this arbitration provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Rather, the Claim will be arbitrated on an individual basis, and not on a class or representative basis.

The party electing arbitration may choose any of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org); JAMS, 1920 Main Street, Suite 300, Irvine CA 92614 (www.jamsadr.com); or National Arbitration and Mediation (NAM), 990 Stewart Ave., Garden City, NY 11530 (www.namadr.com). You may get a copy of the applicable rules of these organizations by contacting them or visiting their websites. If the chosen arbitration organization's rules conflict with this arbitration provision, then the terms of this arbitration provision will govern the Claim. If none of these arbitration organizations is willing or able to handle the arbitration, the arbitrator can be selected pursuant to 9 U.S.C. Sections 5 and 6.

The arbitration hearing will be carried out in the federal district where you reside, unless you and we otherwise agree. Or, if you and we consent, the arbitration hearing can be by telephone. In connection with any arbitration, if you so request, we shall advance your filing, administration, service or case management fee, and your arbitrator or hearing fee, up to a total of $2,500.00. Unless the arbitrator awards them to a party, each party is responsible for the fees of its attorneys, experts, witnesses, and any other fees or costs, including any amount we have advanced.

An arbitrator must be a lawyer with at least ten (10) years experience and familiar with consumer credit law or a retired state or federal court judge. Except as provided below, the arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Furthermore, Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act (*"FAA"*), 9 U.S.C. Sections 1, et seq., except that (i) if a single arbitrator awards you less than $5,000 you shall be entitled, upon request made within 20 days after the entry of that award, to have the award set aside and the Claim rearbitrated by a panel of three arbitrators, and (ii) if the single arbitrator awards you more than $100,000 we shall be entitled, upon request made within 20 days after the entry of that award, to have the award set aside and the Claim rearbitrated by a panel of three arbitrators. The party requesting such rearbitration will be required to pay the filing, administration, service or case management fee and the arbitrators and hearing fee, subject to final determination by the arbitration panel. Any court having jurisdiction can enforce a final arbitration award.

You or we can do the following without giving up the right to require arbitration:

- Seek remedies in small claims court for Claims within the small claims court's jurisdiction, or
- Seek judicial provisional remedies.

If a party does not exercise the right to elect arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This arbitration provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this arbitration provision is deemed or found to be unenforceable for any reason, the remainder of this arbitration provision will remain in full force and effect. The one exception is that, if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis then this arbitration provision will be unenforceable in its entirety.

You and we expressly agree that this arbitration provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

**By signing this Contract you are agreeing to the terms of this arbitration provision, unless you reject it as provided in the next paragraph.**

**Caution: It is important that you read this arbitration provision thoroughly before you sign this Contract. By signing this Contract, you are acknowledging that you have read and understand this arbitration provision. If you do not understand something in this arbitration provision, do not sign this Contract; instead ask your lawyer. You can reject this arbitration provision by checking the box in the *Rejection of Arbitration* section of this Contract before you sign this Contract. If you do so, this arbitration provision will not be a part of this Contract, but all the rest of this Contract will continue to be binding and effective.**

## Notices

**Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

*[This area intentionally left blank.]*

☐ **Single-Interest Insurance.** You must purchase single-interest insurance. The coverage may be obtained from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay

$ __N/A_____ for _____ of coverage. This insurance is solely for the interest of the Seller, its successors and assigns, and no protection exists for your benefit. You authorize us to purchase Single-Interest Insurance.

_____ 10/28/2023

By: _____    Date

_____

By: _____    Date

_____

By: _____    Date

## Rejection of Arbitration

Checking the following box will not affect the terms under which we will finance and sell the Property or any of the terms of this Contract, except that the arbitration provision will not be a part of this Contract:

☐ You reject the arbitration provision of this Contract.

*[This area intentionally left blank.]*

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ Service Contract

| | |
|---|---|
| Term | 24 Months  26,500 Miles |
| Price | $ 1460.00 |
| Coverage | GWC WARRANTY |

☐ Gap Waiver or Gap Coverage

| | |
|---|---|
| Term | |
| Price | $ N/A |
| Coverage | |

☐

| | |
|---|---|
| Term | |
| Price | $ |
| Coverage | |

_____ 10/28/2023

By: _____    Date

_____

By: _____    Date

_____

By: _____    Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from us, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**Deferment.** We may agree to defer the scheduled due date of all or any part of any installment payment, and will collect a $15.00 fee for such deferment. You must maintain the insurance on the Property required by this Contract during any deferment period. You may extend any optional insurance you bought with this Contract if the insurance company or your insurance contract allows the extension and if you pay the extension charge. In addition to the $15.00 deferment fee and the costs of extending required or optional insurance, you will also be required to pay additional finance charges as a result of exercising the deferment option.

## Third Party Agreement

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

N/A
_____
By:                                        Date

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

**Arbitration.** This Contract contains an Arbitration Provision that affects your rights.

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

_____  10/28/2023
By: Devontay A Williams                        Date

_____
By:                                        Date

_____
By:                                        Date

**Notice to the Buyer. a.** Do not sign this Contract before you read it or if it contains any blank spaces. **b.** You are entitled to an exact copy of the Contract you sign. Keep it to protect your legal rights.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

[This area intentionally left blank.]

**Buyer**

_____  10/28/2023
By: Devontay A Williams                        Date

_____
By:                                        Date

_____
By:                                        Date

**Seller**

_____  10/28/2023
By: Sunny Florida Cars                        Date

**Assignment.** This Contract and Security Agreement is assigned to

Westlake Financial

4751 Wilshire Blvd. Suite 100 Los Angeles CA 90010 , the Assignee, phone

(800) 641-6700          . This assignment is made under the terms of a separate agreement made between the Seller and Assignee. ☐ This Assignment is made with recourse.

Seller  Sunny Florida Cars

_____  10/28/2023
By:                                        Date

**BUYER INFORMATION:**

DEVONTAY WILLIAMS
15405 IBIS FALL PL
SUN CITY CENTER, FL 33573    COUNTY: HILLSBOROUGH
HOME:    CELL: 813-648-0325    WORK:
D.L./STATE ID #: W452-161-94-149-0    STATE: FL    EXP. DATE:
D.O.B.: 04/29/94

**SELLER INFORMATION:**

**SUNNY FLORIDA CARS
2000 9TH ST W
BRADENTON, FL 34205
941-747-5097**

SALESPERSON:

**VEHICLE INFORMATION:**

| | | | |
|---|---|---|---|
| YEAR: 2019 | COLOR 1: GRAY | VIN: 2C3CDXGJ5KH507746 | STOCK: 7746 |
| MAKE: DODGE | COLOR 2: | STYLE: SCAT PACK | CYL: 8 |
| MODEL: CHARGER | BODY: 4DR | MILEAGE: 108902 | TRANS: AUTO |

☐ If this box is checked, the vehicle that you are purchasing has been licensed, registered, or used as a taxicab, police vehicle, or short-term-lease vehicle, is a vehicle that is rebuilt or assembled from parts, is a kit car, glider kit, replica, street rod, custom vehicle, has been repurchased by a manufacturer under Florida's Lemon Law (Fla. Stat. ch. 681), or is a flood vehicle: _____ (indicate prior uses, brands or types)

**TRADE-IN INFORMATION:**

YEAR:    COLOR:
MAKE:    MILEAGE:
MODEL:    BODY:
VIN:
BALANCE OWED TO:

BALANCE OWED: $ 0.00    GOOD THROUGH:
ALLOWANCE: $ 0.00    QUOTED BY:

**INSURANCE INFORMATION:**

COMPANY:
AGENT:
PHONE:    POLICY #:

**LIEN HOLDER INFORMATION:**

COMPANY: WESTLAKE FINANCIAL
STREET: P.O. BOX 76809
CITY, STATE, ZIP: LOS ANGELES, CA 90076

**REMARKS:**

| SETTLEMENT | |
|---|---|
| VEHICLE PRICE | 26,015.66 |
| Predelivery Service Fee [see NOTE 1] | 399.00 |
| SUBTOTAL | 26,414.66 |
| Sales Tax: | 1,747.48 |
| Title Fee: | C.O.D. |
| License Fee: | C.O.D. |
| Registration Fee: | C.O.D. |
| Transfer Fee: | C.O.D. |
| Temp Tag Fee: | C.O.D. |
| Doc Stamps: | 75.95 |
| Payoff on Trade-in: | N/A |
| WARRANTY: | 1,460.00 |
| TOTAL DUE | 29,698.09 |

**NOTE 1:** This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

**WARRANTY DISCLAIMER:**
**Unless Seller provides a written warranty, or enters into a service contract within 90 days from the date of this contract, this vehicle is being sold "AS IS – WITH ALL FAULTS" and Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.** This disclaimer does not affect any warranties the vehicle manufacturer. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of the vehicle and the related products and services.

| CREDIT | | |
|---|---|---|
| TRADE-IN ALLOWANCE | N/A |
| DEPOSIT | N/A |
| DOWN PAYMENT | 8,000.00 |
| TOTAL CREDIT | 8,000.00 |
| ☐ Cash ☒ Finance | |
| BALANCE DUE | 21,698.09 |
| If financed, please see your installment sales contract for information about finance charge, insurance, and terms of payment (other than cash). | |

**CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY)** The information you see on the window form is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

Buyer hereby declares that they are of legal age to transact business and that no unfair inducement has been made by Seller. This agreement and the related documents that Buyer signs contemporaneously with this agreement, including any retail installment contract, contain the entire agreement between Buyer and Seller and cancels and supersedes any prior agreement including oral agreements relating to the sale of the motor vehicle. Any change to this agreement must be in writing and Seller must sign it.

X _____ 10/28/23    X _Devonte Williams_ 10/28/23    X __N/A__
Accepted by Authorized Representative of Seller    Date    Buyer    Date    Co-Buyer    Date

FZ-FL-BOS rev. 05/21      ©2021 Frazer Computing, LLC

**Exhibit C**

date 10 / 27 / 23    No. 075165

received from Devontay Williams    $ 7,000 —

amount _____ dollars

for payment of 2019 Dodge Charger

☒ cash   ○ money order   ○ credit card   ○ check # _____

| amount due | | |
| amount paid | | |
| balance | | |

from _____ to _____

signature MAB

88SWS

---

date 10 / 28 / 23    No. 075169

received from Devontay Williams    $ 225 ⁰⁰

amount 2019 Charger 7746 _____ dollars

for payment of TAg Fee

○ cash   ○ money order   ⊗ credit card   ○ check # _____

| amount due | | |
| amount paid | | |
| balance | | |

from _____

signature _____

88SWS

---

date 10 / 28 / 23    No. 075167

received from Devontay Williams    $ 1000 ⁰⁰

amount 2019 Charger # 7746 _____ dollars

for payment of Deposit

○ cash   ○ money order   ○ credit card   ○ check # _____

| amount due | | |
| amount paid | | |
| balance | | |

from _____

signature _____

88SWS

---

Exhibit

C



# NOTICE OF CLAIM TO INTEREST & EMERGENCY BREACH OF CONTRACT 1st Attempt

I Willliams, Devontay-A/agent here on behalf of DEVONTAY WILLIAMS/principal

I Hereby accept all Titles, All Rights, All Interest, and Guaranteed Equity owed to Principal DEVONTAY WILLIAMS . I Hereby instruct CFO Paul Kerwin to apply Principals Balance to Principals Account# 86487180 - V# 2 for the entirety of this Contract each and every billing cycle for set-off. I also see that I didn't include Life, Accident, Health, Property Damage & Liability Insurance inside the Finance Charge which is the sum of ALL charges and I would like to do that now. I applied for a Loan on 10/28/2023 and got approved & received the car I applied for, Then on 11/01/2023 a three party tow company was called stole my car/property unlawfully & in a unlawful manner without my consent. That is organized crime, racketeering, & extortion leaving me damaged. Which is breaching the peach & breach of contract in the security agreement it states I will keep the Property in my possession and good condition and repair. I have the right to Credit. Withholding my access to my securities is securities fraud. Withholding my property without my consent is violating my Consumer Rights. I also Instruct CFO Paul Kerwin to release my property/Car. Since you are denying me access to my property, please RETRACT my application. Please apply this Tender of payment to the account within 5 business days after receipt of this notice. I also instruct CFO Paul Kerwin to communicate through writing if there is any discrepancies within 5 business days after receipt of notice then I can assume that the aforesaid instruction have been completed.

Thank You,

Exhibit I

1

# <u>NOTICE OF CLAIM TO INTEREST & EMERGENCY BREACH OF CONTRACT  2nd ATTEMPT OPPORTUNITY TO CURE.</u>

I Williams, Devontay-A/Agent here on behalf of DEVONTAY WILLIAMS/principal

I Hereby accept all Titles, All Rights, All Interest, and Guaranteed Equity owed to Principal DEVONTAY WILLIAMS . I Hereby instruct CFO Paul Kerwin to apply Principals Balance to Principals Account# 86487180 - V#2 for the entirety of this Contract each and every billing cycle for set-off. I also see that I didn't include Interest, time price differential, and any amount payable under a point, discount, or other system or additional charges, service or carrying charge , loan fee, finder's fee, or similar charge, Fee for an investigation or credit report, Premium or other charge for any guarantee or insurance protecting DEVONTAY WILLIAMS against the obligor's default or other credit loss, Borrower-paid mortgage broker fees, including fees paid directly to the broker or the lender (for delivery to the broker), Life, Accident, Health, Property Damage & Liability Insurance inside the Finance Charge (15 usc 1605) which is the sum of ALL charges and I would like to include that now. I applied for a 2019 Dodge Charger on 10/28/2023 and got approved & received the car I applied for in a consumer credit transaction, then on 11/01/2023 a third party tow company was called came stole the car/property unlawfully & in a manner without my consent. That is organized crime, racketeering, & Extortion, violating the Consumer Credit Protection act leaving emotionally damaged. Which is breaching the peace & breach of contract in the security agreement it states I will keep the Property in my possession and good condition and repair. I have the right to credit, Withholding my access to my securities is securities fraud, Withholding my property without my consent is violating my consumer Rights. I aso Instruct CFO Paul Kerwin to release my property/car. Since you are denying me access to my property please  RETRACT my application. Please apply this Tender of payment to the account within 5 business days after receipt of this notice. I also instruct CFO Paul Kerwin to communicate through writing if there is any discrepancies within 5 business days after receipt of notice then I can assume that the aforesaid instruction have been completed. THESE INSTRUCTIONS ARE NON-NEGOTIABLE.

1

# NOTICE OF CLAIM TO INTEREST & EMERGENCY BREACH OF CONTRACT  3rd ATTEMPT DEFAULT JUDGEMENT FOR NON-PERFORMANCE

I Williams, Devontay-A/Agent here on behalf of DEVONTAY WILLIAMS/principal

I Hereby accept all Titles, All Rights, All Interest, and Guaranteed Equity owed to Principal DEVONTAY WILLIAMS . I Hereby instruct CFO Paul Kerwin to apply Principals Balance to Principals Account# 86487180 - V#2 for the entirety of this Contract each and every billing cycle for set-off. I also see that I didn't include Interest, time price differential, and any amount payable under a point, discount, or other system or additional charges, service or carrying charge , loan fee, finder's fee, or similar charge, Fee for an investigation or credit report, Premium or other charge for any guarantee or insurance protecting DEVONTAY WILLIAMS against the obligor's default or other credit loss, Borrower-paid mortgage broker fees, including fees paid directly to the broker or the lender (for delivery to the broker), Life, Accident, Health, Property Damage & Liability Insurance inside the Finance Charge (15 usc 1605) which is the sum of ALL charges and I would like to include that now. I applied for a 2019 Dodge Charger on 10/28/2023 and got approved & received the car I applied for in a consumer credit transaction, then on 11/01/2023 a third party tow company was called came stole the car/property unlawfully & in a manner without my consent. That is organized crime, racketeering, & Extortion, violating the Consumer Credit Protection act leaving emotionally damaged. Which is breaching the peace & breach of contract in the security agreement it states I will keep the Property in my possession and good condition and repair. I have the right to credit, Withholding my access to my securities is securities fraud, Withholding my property without my consent is violating my consumer Rights. I aso Instruct CFO Paul Kerwin to release my property/car. Since you are denying me access to my property please  RETRACT my application. Please apply this Tender of payment to the account within 5 business days after receipt of this notice. I also instruct CFO Paul Kerwin to communicate through writing if there is any discrepancies within 5 business days after receipt of notice then I can assume that the aforesaid instruction have been completed. THESE INSTRUCTIONS ARE NON-NEGOTIABLE.

1

## Section 16. Note Issues

### 1. Issuance of Federal Reserve notes; nature of obligation; where redeemable

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are hereby authorized. The said notes shall be obligations of the United States and shall be received by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

[12 USC 411. As amended by act of Jan. 30, 1934 (48 Stat. 337). For redemption of Federal reserve notes whose bank of issue cannot be identified, see act of June 13, 1933.]

### 2. Application for notes by Federal Reserve banks

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A of this Act, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of section 14 of this Act, or bankers' acceptances purchased under the provisions of said section 14, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under section 14 of this Act or any other asset of a Federal reserve bank. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of, or are otherwise held by or on behalf of, Federal Reserve banks.

[12 USC 412. As amended by the acts of Sept. 7, 1916 (39 Stat. 754); June 21, 1917 (40 Stat. 236); Feb. 27, 1932 (47 Stat. 57); Feb. 3, 1933 (47 Stat. 794); Jan. 30, 1934 (48 Stat. 338); March 6, 1934 (48 Stat. 991); June 30, 1941 (55 Stat. 395); May 25, 1943 (57 Stat. 85); June 12, 1945 (59 Stat. 237); June 19, 1968 (82 Stat. 189); Nov. 10, 1978 (92 Stat. 3672); March 31, 1980 (94 Stat. 140); Dec. 6, 1999 (113 Stat. 1638); and Oct. 28, 2003 (117 Stat. 1193).]

### 3. Distinctive letter on notes; destruction of unfit notes

Federal Reserve notes shall bear upon their faces a distinctive letter and serial number which shall be assigned by the Board of Governors of the Federal Reserve System to each Federal Reserve bank. Federal Reserve notes unfit for circulation shall be canceled, destroyed, and accounted for under procedures prescribed and at locations designated by the Secretary of the Treasury. Upon destruction of such notes, credit with respect thereto shall be apportioned among the twelve Federal Reserve banks as determined by the Board of Governors of the Federal Reserve System.

[12 USC 413. As amended by acts of June 21, 1917 (40 Stat. 236); Jan. 30, 1934 (48 Stat. 338); June 12, 1945 (59 Stat. 237); July 19, 1954 (68 Stat. 495); March 3, 1965 (79 Stat. 5); May 20, 1966 (80 Stat. 161); and March 18, 1968 (82 Stat. 50).]

### 4. Granting right to issue notes

The Board of Governors of the Federal Reserve System shall have the right, acting through the Federal Reserve agent, to grant in whole or in part, or to reject entirely the application of any Federal Reserve bank for Federal Reserve notes; but to the extent that such application may be granted the Board of Governors of the Federal Reserve System shall, through its local Federal Reserve agent, supply Federal Reserve notes to the banks so applying, and such bank shall be charged with the amount of the notes issued to it and shall pay such rate of interest as may be established by the Board of Governors of the Federal Reserve System on only that amount of such notes which equals the total amount of its outstanding Federal Reserve notes less the amount of gold certificates held by the Federal Reserve agent as collateral security. Federal Reserve notes issued to any such bank shall, upon delivery, together with such notes of such Federal Reserve bank as may be issued under section 18 of this Act upon security of United States 2 per centum Government bonds, become a first and paramount lien on all the assets of such bank.

[12 USC 414. As amended by acts of June 21, 1917 (40 Stat. 237); Jan. 30, 1934 (48 Stat. 338); June 12, 1945 (59 Stat. 237); and March 18, 1968 (82 Stat. 50).]

### 5. Deposit to reduce liability for outstanding notes

Any Federal Reserve bank may at any time reduce its liability for outstanding Federal Reserve notes by depositing with the Federal Reserve agent its Federal Reserve notes, gold certificates, Special Drawing Right certificates, or lawful money of the United States. Federal Reserve notes so deposited shall not be reissued, except upon compliance with the conditions of an original issue. The liability of a Federal Reserve bank with respect to its outstanding Federal Reserve notes shall be reduced by any amount paid by such bank to the Secretary of the Treasury under section 4 of the Old Series Currency Adjustment Act.

**Federal Reserve Act**



## Section 29. Civil Money Penalty

**(a) First Tier.** Any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who, violates any provision of section 22, 23A, or or any regulation issued pursuant thereto, shall forfeit and pay a civil penalty of not more than $5,000 for each day du which such violation continues.

[12 USC 504(a). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by acts of Oct. 15, 1982 (96 Stat. 1523) and Aug. 9, 1989 (103 470).]

**(b) Second Tier.** Notwithstanding subsection (a), any member bank which, and any institution-affiliated party (within meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who

1.   A. commits any violation described in subsection (a);
     B. recklessly engages in an unsafe or unsound practice in conducting the affairs of such member bank; or
     C. breaches any fiduciary duty;

2.  which violation, practice, or breach--

     A. is part of a pattern of misconduct;
     B. causes or is likely to cause more than a minimal loss to such member bank; or
     C. results in pecuniary gain or other benefit to such party,

shall forfeit and pay a civil penalty of not more than $25,000 for each day during which such violation, practice, or bre continues.

[12 USC 504(b). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(c) Third Tier.** Notwithstanding subsections (a) and (b), any member bank which, and any institution-affiliated party ( the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who--

1. knowingly--

     A. commits any violation described in subsection (a);
     B. engages in any unsafe or unsound practice in conducting the affairs of such credit union; or
     C. breaches any fiduciary duty; and

2. knowingly or recklessly causes a substantial loss to such credit union or a substantial pecuniary gain or other benefit to such party by rea such violation, practice, or breach,

shall forfeit and pay a civil penalty in an amount not to exceed the applicable maximum amount determined under subsection (d) for each day during which such violation, practice, or breach continues.

[12 USC 504(c). As added by act of Nov. 10, 1978 (72 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(d) Maximum Amounts Of Penalties For Any Violation Described In Subsection (c).** The maximum daily amoun any civil penalty which may be assessed pursuant to subsection (c) for any violation, practice, or breach described in subsection is--

1. in the case of any person other than a member bank, an amount to not exceed $1,000,000; and
2. in the case of a member bank, an amount not to exceed the lesser of --

     A. $1,000,000; or
     B. 1 percent of the total assets of such member bank.

[12 USC 504(d). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by acts of Oct. 15, 1982 (96 Stat. 1523) and Aug. 9, 1989 (103 470).]

**(e) Assessment, Etc.** Any penalty imposed under subsection (a), (b), or (c) shall be assessed and collected by

1. in the case of a national bank, by the Comptroller of the Currency; and
2. in the case of a State member bank, by the Board,

in the manner provided in subparagraphs (E), (F), (G), and (I) of section 8(i)(2) of the Federal Deposit Insurance Act penalties imposed (under such section) and any such assessment shall be subject to the provisions of such section.

[12 USC 504(e). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(f) Hearing.** The member bank or other person against whom any penalty is assessed under this section shall be aff an agency hearing if such member bank or person submits a request for such hearing within 20 days after the issuar the notice of assessment. Section 8(h) of the Federal Deposit Insurance Act shall apply to any proceeding under this section.

[12 USC 504(f). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(g) Disbursement.** All penalties collected under authority of this paragraph shall be deposited into the Treasury.

[12 USC 504(g). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(h) Violate Defined.** For purposes of this section, the term "violate" includes any action (alone or with another or oth for or toward causing, bringing about, participating in, counseling, or aiding or abetting a violation.

Exhibit F



P.O. Box 76809
Los Angeles, CA 90076-0809



11/28/2023

Ildlllllpllllllpllllllplllllllpllllllpllllldpllllllpllll
0008050-0015612 S0105 001 ------ 593037
**DEVONTAY WILLIAMS**
**15404 IBIS FALL PL**
**SUN CITY CENTER, FL 33573**

## Adverse Action Notice

Reference ID:    86487180

Dear DEVONTAY WILLIAMS

Purchase of a vehicle from:       SUNNY CARS AND TRUCKS LLC
Description of Action Taken:       CREDIT DENIED

Thank you for your application for a Westlake Financial Services account. We regret that we are unable to approve your request at this time. The most significant reason(s) the application was declined are listed below:

Unable to verify income

We obtained information from a consumer reporting agency as part of our consideration of your application; its name, address and telephone numbers are shown below. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report from the credit reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find any information contained in the report you receive that is inaccurate or incomplete, you have the right to dispute the matter with the credit reporting agency.

NOWCOM CORPORATION
DEALERCENTER COMPLIANCE DEPARTMENT
4751 WILSHIRE BLVD, SUITE 115
LOS ANGELES, CA 90010
888-669-2669



Mon – Fri: 5 am to 8 pm • Sat and Sun: 5 am to 2 pm (all times pacific) • Phone: (888) 739-9192

5231

**Information about your External Credit Score Used in this Evaluation for Credit**

In addition, we also obtained an external credit score from the consumer reporting agency indicated above and used it in making our credit decision.  If more than one agency is listed, the credit score was obtained from the first listed agency. Your credit score is a number that reflects the information in your credit report.  Your credit score can change, depending on how the information in your credit report changes.  The credit score below was developed using standard industry methods and was used to evaluate your application.  The credit score may differ from the score you obtain from a consumer reporting agency.

Your credit score: 586

Date:    10/31/2023

Scores range from a low of 250 to a high of 900

Key factors that adversely affected your credit score:

      Serious Delinquency, And Public Record Or Collection Filed

      Lack Of Recent Revolving Account Information

      Too Few Accounts Currently Paid As Agreed

      Lack Of Recent Installment Loan Information

### IMPORTANT INFORMATION REQUIRED BY FEDERAL LAW

*The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.  The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, 600 Pennsylvania Avenue, NW Washington, DC 20580.*

If you have any questions regarding this letter, please write us at: Westlake Financial Services, PO BOX 76809, Los Angeles, California 90076-0809.

Sincerely,
Customer Care
Westlake Financial Services
www.westlakefinancial.com





# *DURABLE POWER OF ATTORNEY*

I, DEVONTAY WILLIAMS, residing at 15404 Ibis Fall Place, Sun City Center, Florida 33573, hereby appoint Williams, Devontay-Alexander of 15404 Ibis Fall Place, Sun City Center, Florida 33573, as my attorney-in-fact ("Agent") to exercise the powers and discretions described below.

This Power of Attorney shall not be affected by my subsequent incapacity.

I hereby revoke any and all general powers of attorney and special powers of attorney that previously have been signed by me.

My Agent shall have full power and authority to act on my behalf. This power and authority shall authorize my Agent to manage and conduct all of my affairs and to exercise all of my legal rights and powers, including all rights and powers that I may acquire in the future. My Agent's powers shall include, but not be limited to, the power to:

1. Open, maintain or close bank accounts (including, but not limited to, checking accounts, savings accounts, and certificates of deposit), brokerage accounts, retirement plan accounts, and other similar accounts with financial institutions.

    a. Conduct any business with any banking or financial institution with respect to any of my accounts, including, but not limited to, making deposits and withdrawals, negotiating or endorsing any checks or other instruments with respect to any such accounts, obtaining bank statements, passbooks, drafts, money orders, warrants, and certificates or vouchers payable to me by any person, firm, corporation or political entity.

    b. Add, delete or change beneficiaries to any financial accounts I own including insurance policies, annuities, retirement accounts, payable on death savings or checking accounts or other investments.

        DEVONTAY WILLIAMS initials: _____

    c. Perform any act necessary to deposit, negotiate, sell or transfer any note, security, or draft of the United States of America, including U.S. Treasury Securities.

    d. Have access to any safe deposit box that I might own, including its contents.

2. Create or change rights of survivorship.

        DEVONTAY WILLIAMS initials: _____

3. Provide for the support and protection of myself, my spouse, or of any minor child I have a duty to support or have established a pattern of prior support, including, without limitation,

provision for food, lodging, housing, medical services, recreation and travel.

4. Sell, exchange, buy, invest, or reinvest any assets or property owned by me. Such assets or property may include income producing or non-income producing assets and property.

5. Purchase and/or maintain insurance and annuity contracts, including life insurance upon my life or the life of any other appropriate person.

6. Take any and all legal steps necessary to collect any amount or debt owed to me, or to settle any claim, whether made against me or asserted on my behalf against any other person or entity.

7. Enter into binding contracts on my behalf.

8. Exercise all stock rights on my behalf as my proxy, including all rights with respect to stocks, bonds, debentures, commodities, options or other investments.

9. Maintain and/or operate any business that I may own.

10. Employ professional and business assistance as may be appropriate, including attorneys, accountants, and real estate agents.

11. Sell, convey, lease, mortgage, manage, insure, improve, repair, or perform any other act with respect to any of my property (now owned or later acquired) including, but not limited to, real estate and real estate rights (including the right to remove tenants and to recover possession). This includes the right to sell or encumber any homestead that I now own or may own in the future.

12. Prepare, sign, and file documents with any governmental body or agency, including, but not limited to, authorization to:

    a. Prepare, sign and file income and other tax returns with federal, state, local, and other governmental bodies.

    b. Obtain information or documents from any government or its agencies, and represent me in all tax matters, including the authority to negotiate, compromise, or settle any matter with such government or agency.

    c. Prepare applications, provide information, and perform any other act reasonably requested by any government or its agencies in connection with governmental benefits (including medical, military and social security benefits), and to appoint anyone, including my Agent, to act as my "Representative Payee" for the purpose of receiving Social Security benefits.

13. Make gifts from my assets to members of my family and to such other persons or

charitable organizations with whom I have an established pattern of giving (or if it is appropriate to make such gifts for estate planning and/or tax purposes), to file state and federal gift tax returns, and to file a tax election to split gifts with my spouse, if any. No Agent acting under this instrument, except as specifically authorized in this instrument, shall have the power or authority to (a) gift, appoint, assign or designate any of my assets, interests or rights, directly or indirectly, to such Agent, such Agent's estate, such Agent's creditors, or the creditors of such Agent's estate, (b) exercise any powers of appointment I may hold in favor of such Agent, such Agent's estate, such Agent's creditors, or the creditors of such Agent's estate, or (c) use any of my assets to discharge any of such Agent's legal obligations, including any obligations of support which such Agent may owe to others, *excluding* those whom I am legally obligated to support.

DEVONTAY WILLIAMS initials: _____

14. To transfer any of my assets to the trustee of any revocable trust created by me, if such trust is in existence at the time of such transfer.

15. To utilize my assets to fund a trust not created by me, but to which I have either established a pattern of funding, or to fund a trust created by my Agent for my benefit or the benefit of my dependents, heirs or devisees upon the advice of a financial adviser.

DEVONTAY WILLIAMS initials: _____

16. To create, sign, modify or revoke any trust agreements or other trust documents in an attempt to manage or create a trust that was created for my benefit or the benefit of my dependents, heirs or devisees. This shall include the creation, modification or revocation of any inter vivos, family living, irrevocable or revocable trusts.

DEVONTAY WILLIAMS initials: _____

17. Subject to other provisions of this document, my Agent may disclaim any interest, which might otherwise be transferred or distributed to me from any other person, estate, trust, or other entity, as may be appropriate, including any power of appointment. However, my Agent may not disclaim assets to which I would be entitled, if the result is that the disclaimed assets pass directly or indirectly to my Agent or my Agent's estate. Provided that they are not the same person, my Agent may disclaim assets which pass to my Gift Agent, and my Gift Agent may disclaim assets which pass to my Agent.

DEVONTAY WILLIAMS initials: _____

18. Have access to my healthcare and medical records and statements regarding billing, insurance and payments.

This Power of Attorney shall be construed broadly as a General Power of Attorney. The listing of specific powers is not intended to limit or restrict the general powers granted in this Power of

Attorney in any manner.

Any power or authority granted to my Agent under this document shall be limited to the extent necessary to prevent this Power of Attorney from causing, (i) my income to be taxable to my Agent, (ii) my assets to be subject to a general power of appointment by my Agent, or (iii) my Agent to have any incidents of ownership with respect to any life insurance policies that I may own on the life of my Agent.

My Agent shall not be liable for any loss that results from a judgment error that was made in good faith. However, my Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney. A Successor Agent shall not be liable for acts of a prior Agent.

No person who relies in good faith on the authority of my Agent under this instrument shall incur any liability to me, my estate or my personal representative. I authorize my Agent to indemnify and hold harmless any third party who accepts and acts under this document.

If any part of any provision of this instrument shall be invalid or unenforceable under applicable law, such part shall be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of such provision or the remaining provisions of this instrument.

My Agent shall be entitled to reasonable compensation for any services provided as my Agent. My Agent shall be entitled to reimbursement of all reasonable expenses incurred as a result of carrying out any provision of this Power of Attorney.

My Agent shall provide an accounting for all funds handled and all acts performed as my Agent as required under state law or upon my request or the request of any authorized personal representative, fiduciary or court of record acting on my behalf.

This Power of Attorney shall become effective immediately, and is not terminated by my subsequent incapacity except as provided in chapter 709, Florida Statutes. This is a Durable Power of Attorney. This Power of Attorney shall continue to be effective until my death. This Power of Attorney may be revoked by me at any time by providing written notice to my Agent.

### [SIGNATURE PAGE FOLLOWS]

Dated ~~November~~ 25, 2023, at Saint Petersburg, Florida.


_____
DEVONTAY WILLIAMS

The foregoing power of attorney was, on the date written above, published and declared by DEVONTAY WILLIAMS in our presence to be his/her power of attorney. We, in his/her presence and at his/her request, and in the presence of each other, have attested to the same and have signed our names as attesting witnesses.

Witness Signature:    _____
Name:                Karen Arzu
City:                saint petersburg
State:               Florida


Witness Signature:    _____
Name:                Zach Sly
City:                Saint Petersburg
State:               Florida

STATE OF FLORIDA,
COUNTY OF PINELLAS, ss:

The foregoing instrument was acknowledged before me, by means of ☐ physical presence or ☐ online notarization, this _____ day of _____, _____ by DEVONTAY WILLIAMS, who is personally known to me or who has produced _____ as identification.


_____
Signature of person taking acknowledgment

_____
Name typed, printed, or stamped

## WITNESS ATTESTATION

The foregoing power of attorney was, on the date written above, published and declared by DEVONTAY WILLIAMS in our presence to be his/her power of attorney. We, in his/her presence and at his/her request, and in the presence of each other, have attested to the same and have signed our names as attesting witnesses.

Name: Karen Arzu
Address: 1750 Newark st s
City, State, ZIP Code: saint petersburg, Florida 33711
Telephone: 9418822459

Name: Zach Sly
Address: 726 E Harbor Dr S
City, State, ZIP Code: Saint Petersburg, Florida 33705
Telephone: 7279001079

**Notice to Person Executing Power of Attorney:**

A Power of Attorney is an important legal document. By signing the Power of Attorney, you are authorizing another person to act for you, the principal. Before you sign this Power of Attorney, you should know these important facts:

Your Agent (attorney-in-fact) has no duty to act unless you and your Agent agree otherwise in writing.

This document gives your Agent the powers to manage, dispose of, sell and convey your real and personal property, and to use your property as security if your Agent borrows money on your behalf, unless you provide otherwise in this Power of Attorney.

Your Agent will have the right to receive reasonable payment for services provided under this Power of Attorney unless you provide otherwise in this Power of Attorney.

The powers you give your Agent will continue to exist for your entire lifetime, unless you state that the Power of Attorney will last for a shorter period of time or unless you otherwise terminate the Power of Attorney. The powers you give your Agent in this Power of Attorney will continue to exist even if you can no longer make your own decisions respecting the management of your property, unless you provide otherwise in this Power of Attorney.

You can change or correct the terms of this Power of Attorney only by executing a new Power of Attorney, or by executing an amendment through the same formalities as an original. You have the right to revoke or terminate this Power of Attorney at any time, so long as you are competent.

This Power of Attorney must be dated and must be acknowledged before a notary public and signed by two witnesses. Both witnesses and the principal must be mentally competent adults, and the witnesses should actually watch the principal sign the Power of Attorney.

You should read this Power of Attorney carefully. When effective, this Power of Attorney will give your Agent the right to deal with property that you now have or might acquire in the future. The Power of Attorney is important to you. If you do not understand the Power of Attorney, or any provision of it, then you should obtain the assistance of an attorney or other qualified person.

**Notice to Person Accepting the Appointment as Attorney-in-Fact:**

By acting or agreeing to act as the Agent (attorney-in-fact) under this Power of Attorney, you assume the fiduciary and other legal responsibilities of an Agent. These responsibilities include:

1. The legal duty to: act solely in the interest of the principal; act loyally, with care, competence, and diligence; and avoid conflicts of interest.

2. The legal duty to keep a record of all transactions made on behalf of the principal, including the responsibility to produce receipts, ledgers and other records of all deposits, disbursements or other transactions involving the principal's assets or indebtedness.

3. To cooperate with the principal's Agent for health care decisions, should the principal appoint such an Agent, in making decisions in accordance with the principal's desires or in the best interest of the principal if the principal's wishes are not known.

4. The legal duty to preserve the principal's estate plan, if one exists, and the principal's desires for such plan to be preserved.

5. The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by you.

6. The legal duty to terminate actions as Agent (Attorney-in-Fact) under this Power of Attorney upon the occurrence of any of the following:

   a. Principal's death;
   b. Revocation of the Power of Attorney of principal;
   c. The arrival of any date stated in the Power of Attorney, which states the termination of the Power of Attorney, if any; or
   d. No additional action is required under the Power of Attorney.

7. If you are the spouse of the principal, the Power of Attorney terminates upon legal separation or dissolution of the marriage.

8. You may be held responsible and liable for any intentional actions which violate or abuse your authority under this Power of Attorney as provided by the state and federal laws governing this Power of Attorney.

9. You have the right to seek legal advice if you do not understand your duties as Agent or any provisions in the Power of Attorney.

You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this Power of Attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property. If you transfer the

principal's property to yourself without specific authorization in the Power of Attorney, you may be prosecuted for fraud and/or embezzlement. If the principal is 65 years of age or older at the time that the property is transferred to you without authority, you may also be prosecuted for elder abuse. In addition to criminal prosecution, you may be sued in civil court.

I have read the foregoing notice and I understand the legal and fiduciary duties that I assume by acting or agreeing to act as the Agent (attorney-in-fact) under the terms of this Power of Attorney.

Date: 11/25/2023

Signed:

*Williams, Devontay - Alexander*
Williams, Devontay-Alexander

This document was prepared by:
Devontay Williams

EXHIBIT N



**UNITED STATES POSTAL SERVICE.**

SAINT PETERSBURG
3135 1ST AVE N
SAINT PETERSBURG, FL 33730-9998
(800)275-8777

11/20/2023                                    07:16 PM

| Product | Qty | Unit Price | Price |
|---------|-----|------------|-------|
| PM Express 2-Day | 1 | | $28.75 |

Flat Rate Env
  Merrifield, VA 22119
  Flat Rate
  Signature Requested
  Scheduled Delivery Date
    Wed 11/22/2023 06:00 PM
  Money Back Guarantee
  Tracking #:
    EI447545443US
  Insurance                              $0.00
    Up to $100.00 included
Total                                    $28.75

| PM Express 2-Day | 1 | | $28.75 |

Flat Rate Env
  Los Angeles, CA 90016
  Flat Rate
  Signature Requested
  Scheduled Delivery Date
    Wed 11/22/2023 06:00 PM
  Money Back Guarantee
  Tracking #
    EI325303915US
  Insurance                              $0.00
    Up to $100.00 included
Total                                    $28.75

| PM Express 2-Day | 1 | | $28.75 |

Flat Rate Env
  Evansville, IN 47708
  Flat Rate
  Signature Requested
  Scheduled Delivery Date
    Wed 11/22/2023 06:00 PM
  Money Back Guarantee
  Tracking #:
    EI325303898US
  Insurance                              $0.00
    Up to $100.00 included
Total                                    $28.75

| PM Express 2-Day | 1 | | $28.75 |

Flat Rate Env
  Bradenton, FL 34205
  Flat Rate
  Signature Requested
  Scheduled Delivery Date
    Wed 11/22/2023 06:00 PM
  Money Back Guarantee
  Tracking #:
    EI325303907US
  Insurance                              $0.00
    Up to $100.00 included
Total                                    $28.75

Grand Total:                            $115.00

Cash                                    $115.00

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Save this receipt as evidence of
insurance. For information on filing a


**UNITED STATES POSTAL SERVICE.**

SAINT PETERSBURG
3135 1ST AVE N
SAINT PETERSBURG, FL 33730-9998
(800)275-8777

12/02/2023                         02:54 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|

Priority Mail®        1              $9.65
Flat Rate Env
   Merrifield, VA 22119
   Flat Rate
   Expected Delivery Date
      Tue 12/05/2023
   Tracking #:
      9505 5145 3682 3336 0530 53
   Insurance                        $0.00
      Up to $100.00 included
Total                               $9.65

Priority Mail®        1              $9.65
Flat Rate Env
   Bradenton, FL 34205
   Flat Rate
   Expected Delivery Date
      Mon 12/04/2023
   Tracking #:
      9505 5145 3682 3336 0530 77
   Insurance                        $0.00
      Up to $100.00 included
Total                               $9.65

Priority Mail®        1              $9.65
Flat Rate Env
   Evansville, IN 47708
   Flat Rate
   Expected Delivery Date
      ?            2023
   Trac
      ?2 3336 0530 91
   Insura
      Up       included
Total                               $9.65

Priority Mail®        1              $9.65
Flat Rate Env
   Los Angeles, CA 90010
   Flat Rate
   Expected Delivery Date
      Mon 12/04/2023
   Tracking #:
      9505 5145 3682 3336 0531 14
   Insurance                        $0.00
      Up to $100.00 included
Total                               $9.65

Grand Total:                       $38.60

Cash                             $100.00
Change                           -$61.40

In a hurry? Self-service kiosks offer
   quick and easy check-out. Any Retail
      Associate can show you how.

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
   and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
            1-800-222-1811.

   Save this receipt as evidence of
insurance. For information on filing an
         insurance claim go to
   https://www.usps.com/help/claims.htm



**UNITED STATES POSTAL SERVICE.**

SAINT PETERSBURG
3135 1ST AVE N
SAINT PETERSBURG, FL 33730-9998
(800)275-8777

12/11/2023                              06:57 PM
-------------------------------------------------
Product            Qty    Unit      Price
                          Price
-------------------------------------------------
Priority Mail®      1               $9.65
Flat Rate Env
    Bradenton, FL 34205
    Flat Rate
    Expected Delivery Date
        Thu 12/14/2023
    Tracking #:
        9505 5145 3681 3345 2622 25
    Insurance                       $0.00
        Up to $100.00 included
Total                               $9.65

Priority Mail®      1               $9.65
Flat Rate Env
    Evansville, IN 47708
    Flat Rate
    Expected Delivery Date
        Fri 12/15/2023
    Tracking #:
        9505 5145 3681 3345 2622 49
    Insurance                       $0.00
        Up to $100.00 included
Total                               $9.65

Priority Mail®      1               $9.65
Flat Rate Env
    Merrifield, VA 22119
    Flat Rate
    Expected Delivery Date
        Fri 12/15/2023
    Tracking #:
        9505 5145 3681 3345 2622 63
    Insurance                       $0.00
        Up to $100.00 included
Total                               $9.65

Priority Mail®      1               $9.65
Flat Rate Env
    Los Angeles, CA 90010
    Flat Rate
    Expected Delivery Date
        Thu 12/14/2023
    Tracking #:
        9505 5145 3681 3345 2622 87
    Insurance                       $0.00
        Up to $100.00 included
Total                               $9.65
-------------------------------------------------
                                    $38.60

                                    $40.00
                                    -$1.40

    In a hurry? Self-service kiosks offer
    quick and easy check-out. Any Retail
        Associate can show you how.

    Text your tracking number to 28777 (2USPS)
    to get the latest status. Standard Message
    and Data rates may apply. You may also
        visit www.usps.com USPS Tracking or call
            1-800-222-1811.

    Save this receipt as evidence of
    insurance. For information on filing an
        insurance claim go to

# USPS Tracking®

FAQs >

Get the free Informed Delivery® feature to receive
automated notifications on your packages

**Learn More**

(https://reg.usps.com/xsell?
app=U' psTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/st

✕

**Scheduled Delivery by**

**WEDNESDAY** by

**22** November 2023 ⓘ **6:00pm** ⓘ

Your item was delivered to the front desk,
reception area, or mail room at 1:05 pm on
November 22, 2023 in LOS ANGELES, CA
90010. Waiver of signature was exercised at
time of delivery.

_____

**Get More Out of USPS Tracking:**

   **USPS Tracking Plus®**

LOS ANGELES, CA 90010
November 22, 2023, 1:05 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?**
**(https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ⌄ |
|---|---|
| Proof of Delivery | ⌄ |
| USPS Tracking Plus® | ⌄ |
| Product Information | ⌄ |

Feedback

# USPS Tracking®

Get the free Informed Delivery® feature to receive
automated notifications on your packages

**Learn More**

**(https://reg.usps.com/xsell?**
app=U·psTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/st

✕

Your item was delivered to the front desk,
reception area, or mail room at 12:05 pm on
December 5, 2023 in LOS ANGELES, CA
90010.

LOS ANGELES, CA 90010
December 5, 2023, 12:05 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?**
**(https://faq.usps.com/s/article/Where-is-my-**
**package)**

**Get More Out of USPS Tracking:**

　　**USPS Tracking Plus®**

---

**Text & Email Updates** ⌄

Feedback

**USPS Tracking Plus®** ⌄

**Product Information** ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

# USPS Tracking®

FAQs >

Get the free Informed Delivery® feature to receive
automated notifications on your packages

**Learn More**

(https://reg.usps.com/xsell?
app=U' psTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/st

✕

Your item was delivered to the front desk, reception area, or mail room at 12:34 pm on December 14, 2023 in LOS ANGELES, CA 90010.

_____

**Get More Out of USPS Tracking:**

   **USPS Tracking Plus®**

LOS ANGELES, CA 90010
December 14, 2023, 12:34 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?**
**(https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ⌄ |
| --- | --- |

| USPS Tracking Plus® | ⌄ |
| --- | --- |

| Product Information | ⌄ |
| --- | --- |

**See Less** ⌃

Feedback

Track Another Package

Enter tracking or barcode numbers